MARY A. YOUNG, ADMINISTRATRIX, ETC. v. ST. PAUL CITY RAILWAY COMPANY.[1]

February 7, 1919.

No. 21,102.

**Continuance — because of failure to secure testimony.**
1. There is no hard and fast rule for determining whether an application for a continuance should be granted or denied. Courts are properly inclined to be liberal in granting it, where it is requested because of defendant's inability to procure the testimony of an employee whose wrongful acts gave rise to plaintiff's cause of action.

**Same — when party has shown lack of diligence.**
2. There is no abuse of discretion in refusing to grant a continuance

[1]Reported in 170 N. W. 845.

because of defendant's lack of diligence in securing the testimony of an employee, where it appeared that issue was joined four months before the case came on for trial, and that no attempt to secure the attendance or procure the testimony of such employee. was made until the day before the trial began, when defendant first discovered that he had left its employ and gone to a distant state several weeks theretofore.

**Assault and battery — damages not excessive.**

3. A verdict for $2,500 is not excessive, where there is evidence which would justify the jury in finding that plaintiff, while a passenger on one of defendant's street cars, was the victim of an unprovoked assault at the hands of defendant's motorman and that, as a consequence, pulmonary tuberculosis, latent in his system, developed from a state of arrested progress to one of activity.

Action in the district court for Ramsey county to recover $10,000 for assault and battery. The answer was a general denial. The case was tried before Brill, J., who when defendant rested denied its motion for a directed verdict, and a jury which returned a verdict for $2,500. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*R. T. Boardman,* for appellant.

*Samuel A. Anderson,* for respondent.

LEES, C.

This is an appeal from an order denying a motion for a new trial after a verdict in respondent's favor for $2,500.

1. Issue was joined January 25, 1918. The complaint alleged that on November 21, 1917, while plaintiff was a passenger on one of defendant's street cars, he was assaulted by the motorman in charge of the car. Notice that the case would be called for trial on June 10, 1918, was sent out by the clerk of the district court about two weeks prior to that date. The case came on for trial on June 11. Defendant on that day applied for a continuance, on the ground that the motorman charged with having committed the assault was then a resident of Portland, Oregon. No subpoena had been served upon him, and none was issued. Through an oversight of someone in defendant's service, the fact that the motorman had ceased to be an employee was not communicated either to defend-

ant's legal department or claim department, which have exclusive charge of the defense of actions brought against it. Apparently it was assumed by its representatives that the motorman had remained in its employ from the time of the assault to the time of the trial. If he had remained, it appeared that his attendance as a witness could have been secured on an hour's notice. Not until June 10 was it discovered that the motorman had ceased to work for defendant and had left the state some three or four weeks theretofore. The trial court refused to grant a continuance, and this is the basis of the first assignment of error. Plaintiff declined to admit that the absent witness would give the testimony set forth in the affidavit for continuance, insisting that there was no showing of the exercise of diligence on the part of defendant in attempting to secure his attendance. That view was adopted by the court and defendant forced to go to trial without the benefit of the motorman's testimony. Undoubtedly defendant was handicapped in making its defense by its inability to produce the testimony of the motorman.

There is no hard and fast rule for determining whether an application for a continuance should be granted or denied. The right of the parties to have a speedy trial should be considered on the one hand, and, on the other, the substantial rights of a party should not be prejudiced by forcing him to go to trial when he cannot reasonably be expected to do justice to his case. In cases such as we have here, courts are properly inclined to be liberal in granting continuances. Where the absent witness is the person whose acts give rise to defendant's alleged liability, the importance of procuring his testimony as a witness is self-evident.

If there had been a showing of the exercise of any diligence whatever in endeavoring to secure the testimony of the motorman, we apprehend that the able and experienced trial judge would have granted a continuance, but there was an entire lack of such a showing. Defendant knew in January that this action was pending and, in the natural order of things, would be brought to trial, yet it allowed an employee to leave the state several weeks before the arrival of the time for going to trial, without taking any precautions to secure his attendance as a witness. Not until the day before the trial did defendant make any effort to locate its most important witness. Upon the showing made the trial court

did not abuse its discretion in refusing to grant a continuance. McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917.

2. The verdict was for $2,500. A new trial was asked on the ground that the sum awarded was excessive and given under the influence of passion and prejudice and was based upon conjecture.

Plaintiff's original occupation was that of a railway freight conductor. From November 9, 1910, to July 29, 1911, he was a patient in the Minnesota Sanatorium for Consumptives at Walker and was treated for tuberculosis of the lungs, which at that time had reached a moderately advanced state. When he was discharged the disease was in a state of arrested development. He re-entered the railway service, where he remained until November, 1913, when he became an officer of the Brotherhood of Railway Trainmen, holding office until November, 1915. Thereafter he followed the business of selling real estate. There was evidence tending to show that up to the time of the alleged assault there had been no further development of the disease. On January 2, 1918, he was examined by a physician who testified that he was then suffering from a congestion of the lungs, which was speedily followed by pronounced symptoms of tuberculosis. At the time of the trial he was in an advanced stage of the disease, which has since resulted fatally. There was medical testimony to the effect that tuberculosis, when once its progress is arrested, is likely "to light up" as the result of external bodily injuries severe enough to lower the patient's power of resistance or to depress his vitality, and that this is what happened in plaintiff's case.

According to his testimony, the motorman attacked him without provocation, pushed him out of the car, threw him down on the rear platform, got on top of him, struck him several times on the chest, and kicked him in the side. He testified that when he got up and walked away from the car he began to spit blood, and thereafter had difficulty in breathing and continued to spit blood up to the time when he first consulted a physician on January 2. The conductor on the car testified that the motorman assaulted plaintiff, and so did a passenger who interfered to put a stop to the assault, but both witnesses minimized its violence.

If the jury accepted plaintiff's version of the assault and believed the testimony of his physician, the damages awarded are neither conjectural nor excessive. According to the medical testimony, plaintiff was rea-

sonably certain to have lived out his natural expectancy, if the germs of tuberculosis in his system had not been awakened to fresh activity by the assault upon him. As was said in Wendt v. Bowman & Libby, 126 Minn. 509, 148 N. W. 568: "The verdict is large and could not be sustained, unless based upon the disabilities resulting from the diseases which followed (the assault). The jury * * * found that they were a consequence of the injuries received and the evidence made the question a matter for them to determine." If a latent disease which plaintiff had when assaulted were aggravated by the assault, defendant is liable in damages for the renewed development of the disease and the verdict is not excessive. Watson v. Rinderknecht, 82 Minn. 235, 84 N. W. 798; Blomquist v. Minneapolis Furniture Co. 112 Minn. 143, 127 N. W. 481. See also Healy v. Hoy, 115 Minn. 321, 132 N. W. 208.

Order affirmed.