## M. W. WATSON v. JAMES RINDERKNECHT.[1]

January 10, 1901.

Nos. 12,365—(153).

### Tort Feasor Liable for Direct Consequences of Act.

The perpetrator of a tort is responsible for the direct and immediate consequences thereof, whether they may be regarded as natural or probable, or whether they might have been contemplated, foreseen, or expected, or not. It is not necessary to the liability of a wrongdoer that the result which actually follows should have been anticipated by him. It is the general character of the act, and not the general result, that the law primarily regards in this connection.

### Effect on Prior Injuries—Evidence.

Held, that it was error for the court below to exclude testimony tending to show that certain injuries received by plaintiff while serving in the army had been aggravated, increased, and intensified, and to what extent, by an assault and battery committed upon him by defendant.

### Substantial Damages.

Held, on the defendant's version of the affray, that he was not justified, but, upon the other hand, was the aggressor from the beginning; and that the jury, in a civil action, should have found for plaintiff in a substantial amount.

Action in the district court for Winona county to recover $2,000 damages for assault and battery. The case was tried before Snow, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Webber & Lees*, for appellant,

*James E. Bradford* and *Brown & Abbott*, for respondent.

COLLINS, J.

Civil action to recover damages alleged to have been sustained by plaintiff by reason of an assault and battery committed by the defendant. The verdict was for the latter, and from an order denying plaintiff a new trial this appeal was taken.

[1] Reported in 84 N. W. 798.

Defendant had agreed to sell and deliver to plaintiff a number of sheep, and there had been paid to him the sum of $10 to bind the bargain. He and his brother brought the sheep from his farm on the day agreed upon, and delivered the same to the plaintiff in the railway yard preparatory to their being loaded in a car for Chicago. We say "delivered" the sheep advisedly, because the defendant himself testified that he delivered the sheep in the yard to the plaintiff. The parties then went to a bank, that the defendant might be paid for the sheep so delivered, at which place plaintiff insisted that there were too many bucks in the lot to conform to the contract, and tendered the defendant the amount due less $40, which sum he proposed to retain until he received returns from the Chicago sale. The defendant declined to receive the money, and the parties separated. The plaintiff returned to the railroad yard, papered the inside of the car to protect the sheep, then loaded them, closed the car door with staples, and, when going away from the yard, met the defendant and his brother, who were returning. Defendant demanded the sheep, and plaintiff refused to surrender possession.

The car stood where it had been loaded, the door being opposite the upper end of the cattle chute, and the defendant went up the chute to the door with the avowed intention of taking the sheep out of the car, using such force as might be necessary, his brother accompanying him. The plaintiff attempted to prevent defendant from opening the door by holding it, and there was more or less altercation. It appears from the defendant's own testimony that during the wrangling he grabbed the plaintiff by the left shoulder and left arm, pulled him away from the car door, swung him around to the end of the chute, which was covered with ice, let go, and plaintiff went down the chute with much force, sliding upon one hip and one shoulder to the bottom, about thirty-five feet. The plaintiff then returned to the door. There was more or less controversy about taking the sheep out of the car. The parties seized each other, and went together to the bottom of the chute, where some blows were exchanged. The plaintiff then went away. Defendant took forcible possession of

the sheep, removed them to another car, and shipped them himself.)

Twenty-two assignments of error have been specified, but of these we need to consider very few. The defendant had himself delivered the sheep to the plaintiff, and they were in the peaceable and exclusive possession of the latter in the car in which he intended to ship them to Chicago. He had closed the car door and fastened it. The defendant went to the yard, and to the door of the car, with intent to use such force as was necessary to open the door and regain possession of the animals. In doing this he was acting unjustifiably, and was performing an act which might end in a breach of the peace, as it did. The courts were open to him if he was entitled to possession of the property, and there was no excuse or warrant for his attempt forcibly to take it out of plaintiff's actual custody. Meeting with resistance, he deliberately assaulted plaintiff, and threw him to the bottom of an inclined cattle chute, covered with ice, a distance of about thirty-five feet. On plaintiff's return to further defend his possession, the defendant again seized him. They went together to the lower end of the chute, where blows were exchanged, the plaintiff evidently "getting the worst of it." We have not overlooked the evidence relating to plaintiff's having in his hand the hammer, used to fasten the paper on the car, when the fracas commenced; but it is evident that he did not attempt to make such use of it as would justify the defendant in throwing him down the chute.

Taking the evidence as it was rendered by defendant and his brother, an eyewitness, we think it conclusively established that the assault and battery upon the plaintiff was without the slightest justification, that the defendant was the aggressor from beginning to end, and that the jury should have found for the plaintiff in some substantial amount; not nominal damages merely. The trial court should have so instructed.

The court also erred in some of its rulings when receiving testimony. The defendant, young and vigorous, received no injuries, while the plaintiff, a feeble man in the neighborhood of sixty years of age, was so injured that he was unable to leave his house for two weeks, and during that time was daily attended by

a physician. In 1863, while serving in the army, he had been injured by the explosion of a shell, for which injury he was receiving a pension at the time of the assault and battery. His counsel attempted to show as part of his case the physical condition he was in just prior to the assault, arising from this injury, and how and to what extent his condition had been affected by the acts of the defendant. The court held this evidence inadmissible at that time, and that it was proper in rebuttal only. It subsequently ruled that such testimony was incompetent for any purpose, and refused to permit plaintiff to show whether his condition at the time of the trial was due to injuries for which defendant was responsible.

The burden was upon the plaintiff to prove such of his injuries as were the direct and proximate result of defendant's acts, and in doing this it was proper to show in what respect, and to what extent, his present condition could be attributed to the assault and battery, and what could be more properly established as the result of his army experience. The injury for which plaintiff was receiving a pension affected his health and enfeebled him unquestionably, but that fact would not deprive him of the right to recover the direct consequences of the defendant's tort,—to recover such damages as could be shown to be the direct result of that wrong. That the plaintiff was in ill health, no matter what the cause, was no excuse for defendant's acts, and would not relieve him from resulting consequences. The defendant could not be held to respond for injuries arising out of other causes, but as to those for which he was the efficient cause an action would lie.

The rule is that the perpetrator of a tort is responsible for the direct and immediate consequences thereof, whether they may be regarded as natural or probable, or whether they might have been contemplated, foreseen, or expected, or not. It is not necessary, to the liability of a wrongdoer, that the result which actually follows should have been anticipated by him. It is the general character of the act, and not the general result, that the law primarily regards in this connection. 8 Am. & Eng. Enc. (2d Ed.) 598, 602, and cases cited. This rule has been adopted in this state in an action for personal injuries arising out of the negli-

gence of a common carrier (Purcell v. St. Paul City Ry. Co., 48 Minn. 134, 139, 50 N. W. 1034), where it was said:

"But when the act or omission is negligence as to any and all passengers, well or ill, any one injured by the negligence must be entitled to recover to the full extent of the injury so caused, without regard to whether, owing to his previous condition of health, he is more or less liable to injury."

It was error to exclude testimony tending to show that the injuries received by the plaintiff in the army had been aggravated, intensified, and increased by reason of the defendant's unlawful act, and to just what extent. Nor can these rulings be reconciled with those subsequently made, under which defendant's counsel were allowed to go fully and minutely into plaintiff's condition, actual and asserted, the efficient cause of which was the explosion of the shell, and were permitted to show that plaintiff had applied for an increase of pension two or three times prior to the encounter with defendant, and his alleged physical condition when making these applications; the result being that defendant was allowed fully to prove plaintiff's physical condition, as shown and claimed by him in his applications to the government, caused by the army injury, while plaintiff was prohibited from showing in what manner and to what extent this particular condition had been affected, increased, and aggravated by defendant.

It is strenuously urged by defendant's counsel that, in view of the absolute verdict for defendant, there could have been no prejudicial error in rulings simply affecting the question of damages, and, at best, that plaintiff could recover nothing more than nominal damages. We have held that on the evidence plaintiff was entitled to substantial damages. He expended $40 for medical assistance and nursing; this item being properly set forth in the complaint, and, on the evidence, uncontroverted. One of the principal reasons why plaintiff did not recover may have been because of these rulings. At any rate, we do not regard these reasons for upholding the order as possessing any merit in this case.

Order reversed, and a new trial granted.