Cheryl ROWE, Respondent,

v.

Mohamed MUNYE, Appellant,

Employers Mutual Insurance Company/Dakota Fire Insurance Company, Defendants.

No. A03–465.

Court of Appeals of Minnesota.

Feb. 17, 2004.

Michael D. Tewksbury, Darin S. Wieneke, Tewksbury, Kerfeld, Zimmer, Minneapolis, MN, for respondent.

Terence R. Peterson, Scott A. Brehm & Associates, Roseville, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, LANSING, Judge, and WRIGHT, Judge.

## O P I N I O N

LANSING, Judge.

In an action for personal injuries sustained in a car accident, Cheryl Rowe pre-

sented medical evidence of a new injury and an aggravation of a pre-existing condition. Over Mohamed Munye's objection, the district court instructed the jury, using CIVJIG 91.40, that if they were unable to separate damages caused by the pre-existing condition from the existing medical condition, then Munye would be liable for all of the damages. The jury returned a verdict for Rowe against Munye, and Munye appeals from the resulting judgment.

## F A C T S

The district court conducted a three-day jury trial on the issue of damages sustained by Cheryl Rowe when Muhamed Munye's car struck her car from behind as she made a left turn. Munye, in his answer to Rowe's complaint, denied liability. He alleged that his car, in turn, had been struck from behind by an unidentified car that had either caused a second collision with Rowe's car or pushed his car into hers. Rowe believed that a third car, driven by a friend of Munye's might have been involved in the accident, but she was unable to ascertain the identity of this driver. Because of the alleged involvement of an unidentified car, Rowe sued her uninsured motorist carrier, Employers Mutual Ins. Co., as well as Munye.

Munye did not cooperate in the discovery process. After he failed to answer interrogatories, attend his three scheduled depositions, and appear for nonbinding arbitration, Rowe moved for summary judgment. Before the summary judgment hearing, the attorneys for all three parties reached an agreement that was stipulated on the record and incorporated into an order. The stipulation provided that if Munye again failed to appear for his rescheduled deposition, his affirmative defense alleging involvement of an uninsured

driver would be stricken, Employers Mutual would be dismissed with prejudice, and the court would direct a verdict of liability against Munye, leaving only the issue of damages for trial. Munye failed to appear for his rescheduled deposition, and on his attorney's motion, the district court implemented the stipulated order.

At the jury trial on damages, Rowe testified that when Munye's car struck her car from behind, she was wearing a seatbelt. The force of the collision propelled her forward, but the seatbelt restrained her from striking any part of the car. Immediately after the accident she had a headache, and her neck was sore. The next day, she saw her chiropractor, Dr. Kelly Sheehan, who took x-rays, manipulated her spine, and applied traction. Rowe had experienced generalized pain in her neck, shoulders, and lower back over a period of years. The pain did not appear to be connected with any significant injuries to her back or neck but had required periodic appointments with chiropractors. She had begun receiving treatment from Sheehan three times a week beginning two months before the accident. About five months after the accident, an MRI showed that Rowe had a posterior disc herniation at C5 and C6 with mild posterior annular bulging at the C6–C7 level. Rowe continued treatment with Sheehan.

Two medical experts provided testimony at trial through videotaped depositions. Sheehan presented opinion evidence that Rowe suffered a permanent injury to the soft tissues of her neck and back as a result of the accident. He also testified that Rowe had degenerative neck problems before the accident. When asked whether Rowe's injuries were caused by the accident or aggravated by the accident, he testified: "I think they were actually

both. I think they are aggravated and accentuated, and I think that there was more damage done to her."

Munye presented the videotaped deposition of Dr. Irman Altafullah, a consulting neurologist, who performed an independent medical examination. Altafullah testified that his physical examination showed that Rowe had a good range of motion in her neck and that the MRI revealed no pinched nerve in the neck that could account for Rowe's report of numbness in her right hand. He stated that as a result of the accident, Rowe may have suffered neck sprain or whiplash and also a lower back sprain. Based on Rowe's medical information, Altafullah believed "that this whiplash or sprain ... was superimposed ... on ... a history of [Rowe's] longstanding neck, mid, and lower back pain." He concluded that Rowe had not sustained permanent aggravation or injury as a result of the accident. The record also contains the results of an examination by Dr. Ronald Tarrel, a consulting neurologist, who reported that Rowe developed increased soreness and headaches after the accident.

Rowe claimed that her damages attributable to the accident totaled $79,000. This amount included $6,000 for past medical damages; $15,000 for past pain, disability, and emotional distress; $52,000 for future pain, disability, and emotional distress; and $6,000 for future medical expenses.

At the close of trial, Rowe submitted proposed jury instructions, including CIVJIG 91.40. Munye's attorney objected to instructing the jury using CIVJIG 91.40. He contended that the last line of the instruction impermissibly shifted the burden of proving damages to Munye. The district court overruled the objection, concluding that CIVJIG 91.40 applied when the facts establish a pre-existing medical condition. In conformance with CIVJIG 91.40, the court instructed the jury:

> There is evidence that Cheryl Rowe had a pre-existing disability or medical condition at the time of the accident.

> Mohamed Munye is liable only for any damages that you find to be directly caused by the accident.

> If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then Mohamed Munye is liable for all of the damages.

By special verdict, the jury found that Rowe sustained a permanent disability as a result of the accident but did not incur medical expenses in excess of $4,000. The verdict provided $7,500 in damages for past pain, disability, and emotional distress; $13,000 for future pain, disability, and emotional distress; and $4,000 for future health care costs or expenses. The district court entered judgment for Rowe against Munye in the amount of $27,331.72, including costs and prejudgment interest.

Munye moved for a new trial, arguing that CIVJIG 91.40 misstates Minnesota law resulting in substantial prejudice to him. The district court denied the motion, and Munye appeals.

## ISSUE

Did prejudicial error result from the district court's instruction to the jury, in a case that involved a claim of damages for both new and pre-existing injuries, that if they could not separate damages caused by the pre-existing disability or medical condition from those caused by the accident, defendant was liable for all of the damages?

## ANALYSIS

We have twice before addressed the question of whether the jury instruction for aggravation of personal damage provided in CIVJIG 91.40 misstates Minnesota law when it advises judges to instruct the jury that "[i]f you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then [the defendant] is liable for all the damages."

In *Blatz v. Allina Health Sys.*, 622 N.W.2d 376 (Minn.App.2001), *review denied* (Minn. May 16, 2001), we held that when applied to apportion damages between the aggravation of a pre-existing medical condition and new injuries attributable to an at-fault defendant, CIVJIG 91.40 misstates Minnesota case law and impermissibly extends the single indivisible injury rule to circumstances that do not involve joint and several liability. *Id.* at 391–92. We reaffirmed this analysis in *Morlock v. St. Paul Guardian Ins. Co.*, 632 N.W.2d 268, 271–72 (Minn.App.2001), *rev'd* 650 N.W.2d 154 (Minn.2002) (holding that facts did not warrant instruction which even if erroneous, was not prejudicial).

On review, the supreme court concluded that the district court in *Morlock* had erred by giving a jury instruction based on CIVJIG 91.40 when neither party had argued for aggravation damages, but held that the error was not prejudicial. *Morlock*, 650 N.W.2d at 162. Although the court withheld a final determination on the propriety of CIVJIG 91.40, the court stated that "it may be possible that CIVJIG 91.40 could be inappropriate in a situation where a plaintiff is seeking both 'new' damages and damages for an aggravation of an admitted to preexisting condition." *Id.* at 161. In evaluating whether the first two sentences of CIVJIG 91.40 are consistent with Minnesota law, the court used as its touchstone its holdings in *Nelson v. Twin City Motor Bus Co.*, 239 Minn. 276, 58 N.W.2d 561 (1953) and *Schore v. Mueller*, 290 Minn. 186, 186 N.W.2d 699 (1971). *See Morlock*, 650 N.W.2d at 160.

These statements are consistent with our holding in *Blatz*. *Blatz* distinguished between only one at-fault defendant's liability for aggravation of a pre-existing condition or disability as described in *Nelson* and *Schore* and more than one at-fault defendants' liability for tortious conduct that combines to harm the plaintiff described in *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970). *Blatz*, 622 N.W.2d at 390–92.

■ Minnesota law provides that when more than one at-fault defendant who has a substantial part in causing harm to the plaintiff seeks to limit liability by apportioning the harm, each defendant who seeks limitation has the burden of proving both that the harm is divisible and the amount of the harm for which each defendant is not liable. *Canada by Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997). "[U]nless the damage caused by each [tortfeasor] is *clearly separable*, permitting the distinct assignment of responsibility to each, each is liable for the entire damage." *Mathews*, 288 Minn. at 21, 178 N.W.2d at 844 (quotation omitted). In *Mathews*, the supreme court adopted the reasoning of the Restatement (Second) of Torts, § 433B(2) (1965), which provides that

> [w]here the tortious conduct of two or more actors has been combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is

capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

*Id.* at 22, 178 N.W.2d at 845. In this context, the *Mathews* court noted that considerations of fairness dictate that the injured party not be required to bear the burden of "proving which impact in a chain collision did which harm." *Id.* Relying on principles of joint and several liability, the court reasoned that placing the burden of proof on the defendant "is a result of a choice made as to where a loss ... shall fall—on an innocent plaintiff or on defendants who are clearly proved to have been at fault" in jointly causing all of the damages. *Id.*

■ But Minnesota law governing aggravation of a pre-existing condition is grounded on a different rule:

"[W]here a pre-existing disease is aggravated by the negligence of another person, the victim's recovery ... is limited to the additional injury caused by this aggravation over and above the consequences which the pre-existing disease, running its normal course, would itself have caused if there had been no aggravation by negligent injury."

*Nelson,* 239 Minn. at 280, 58 N.W.2d at 563.

■ The rule on aggravated conditions reflects the policy consideration that a defendant not be held liable for harm which he did not cause. *See Leubner v. Sterner,* 493 N.W.2d 119, 122 (Minn.1992) (noting that "damages for aggravation of a [pre-existing] condition are simply a means to assure that the defendant pays only for the harm he causes, not the harm plaintiff already had"). Thus the plaintiff retains the burden of proving the extent of any aggravation. *See Schore,* 186 N.W.2d at

701 (discussing plaintiff's burden of proof in context of aggravation damages).

The previous aggravation-of-damages instruction, CIVJIG 163, taken from the 1986 Jury Instruction Guide, is based on *Nelson. Morlock,* 650 N.W.2d at 160. It summarizes Minnesota law on aggravation:

A person who has a defect or disability at the time of an accident is nevertheless entitled to damages for any aggravation of such pre-existing condition, even though the particular results would not have followed if the injured person had not been subject to such pre-existing condition. Damages are limited, however, to those results which are over and above those which normally followed from the pre-existing condition had there been no accident.

4 *Minnesota Practice,* CIVJIG 163 (1986). No one has argued that CIVJIG 163 is incorrect or that *Nelson* or *Schore* are inaccurate statements of Minnesota law on aggravation. Both the majority and the dissent in *Morlock* are grounded on these cases.

This instruction was replaced in 1999 in the fourth edition of the Minnesota Jury Instruction Guides—Civil by CIVJIG 91.40, which was designated as "Items of Personal Damage—Aggravation." 4A *Minnesota Practice,* CIVJIG 91.40 (1999). The most recent version of CIVJIG 91.40 provides:

Items of Personal Damage—Aggravation

**Pre-existing disability or pre-existing medical condition**

There is evidence that (plaintiff) had a pre-existing disability or medical condition at the time of the accident.

(Defendant) is liable for any damages that you find to be directly caused by the accident.

[If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then (defendant) is liable for all the damages.]

4A *Minnesota Practice*, CIVJIG 91.40 (Supp 2004) (brackets in original). The brackets added to the final paragraph are in response to the Minnesota Supreme Court's opinion in *Morlock* and our opinion in *Blatz*. *Id.* at use note.

The CIVJIG's original use note covering CIVJIG 91.40 indicates that the derivation for the change in aggravation instruction from CIVJIG 163 to CIVJIG 91.40 was the supreme court's decision in *Canada*. 4A *Minnesota Practice*, CIVJIG 91.40 use note (1999). Principles drawn from the Restatement have also been advanced as a basis for the change in the aggravation instruction. *See Blatz*, 622 N.W.2d at 390. We are unable to find support for the change in either source.

As we said in *Blatz*, we read *Canada* as an application of the doctrine stated in *Mathews* that when two or more at-fault defendants have a substantial part in causing harm to the plaintiff, and one or more of the defendants seeks to limit liability by apportioning the harm, the burden is on each defendant seeking limitation to prove both that the harm is divisible and the amount of the divided harm for which each is not liable. *Canada* essentially holds that tortfeasors who act independently of one another—and who are therefore severally liable for the separate damage each independently causes—nevertheless are jointly and severally liable for all damages if the resulting injuries are indivisible or the defendant seeking to avoid joint liability fails to establish an apportionment. We did not read *Canada* then, and we do not read it now, to extend a defendant's burden of proof to apportionment between an at-fault defendant and an innocent or a pre-existing cause. "*Canada* ... involved a unique application of the single indivisible injury rule in which joint and several liability is imposed upon multiple tortfeasors." *Morlock*, 650 N.W.2d at 165 (Russell Anderson, J., dissenting (citing *Canada*, 567 N.W.2d at 507–08 and *Mathews*, 288 Minn. at 20–21, 178 N.W.2d at 844)).

We further concluded in *Blatz* that the Restatement does not provide a basis for the change from CIVJIG 163 to CIVJIG 91.40. Although the Restatement recognizes that damages may be apportioned between innocent conduct and at-fault defendants, it does not place a burden on a defendant to prove divisibility or the limit of a defendant's own liability unless two or more actors are involved. *See* Restatement (Second) of Torts § 433B(2), (3) (placing apportionment burden of proof on two or more actors who have combined to cause harm to plaintiff). Comment g specifically provides that the failure-of-proof provisions in § 433B(3) apply only when each of two or more actors has been proved to be at fault (stating that rule "has no application to cases of alternative liability" when no proof exists that conduct of more than one actor has been tortious). And comment c to § 433(B)(2) reiterates that subsection (2), assigning the burden of apportionment to the tortfeasor, is an exception to the general rule that the plaintiff has the burden of establishing that the defendant's tortious conduct caused the harm, further confirming that burden-shifting only applies to multiple tortfeasor situations. *Id.* at cmt. c; *see also Morlock*, 650 N.W.2d at 165 (Russell Anderson, J., dissenting (discussing Restatement)).

█ For these reasons we conclude that CIVJIG 91.40 impermissibly imposes on an

at-fault defendant the burden of proving that he did *not* cause the portion of plaintiff's damages attributable to a pre-existing disability or condition. We find no basis for this conclusion in Minnesota law. The plaintiff in a negligence action bears the burden of proving the link between the defendant's action and the injuries suffered. *Hagsten v. Simberg*, 232 Minn. 160, 163–65, 44 N.W.2d 611, 613 (1950) (noting that "[n]egligence, and its causal relation to the injuries upon which the right to recover rests must be proved by that degree of proof ... [required] by law and that mere proof of the happening of the accident ... without proof of negligence or its causal relation to the result complained of, is not sufficient").

█ Once causation is established, the plaintiff may recover damages flowing from the defendant's negligent act. *See Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 275 n. 2 (Minn.1995) (defining general damages as "the natural, necessary and usual *result of the wrongful act or occurrence* in question") (emphasis added). But a jury instruction requiring the apportionment of damages based on the defendant's act, without recognition of the plaintiff's burden of proof on causation, wrongfully imposes on the defendant the burden of showing that he was not responsible for damages flowing from the plaintiff's pre-existing condition, which he had no part in causing. This allocation of the burden of proof would conflict with the general allocation principle that the party with the greatest access to the relevant evidence should bear the burden. *See Morlock*, 650 N.W.2d at 165 (Russell Anderson, J., dissenting). Multiple tortfeasors can presumably furnish evidence as to their degree of contribution to the plaintiff's injury. "But, if the plaintiff is suffering from a [pre-existing] injury, he or she is in the best position to furnish information on the degree to which that injury was aggravated by the defendant's act." *Id.*

The current use note to CIVJIG 91.40 advocates giving the final sentence of CIVJIG 91.40 only when there is no reasonable basis for apportionment between damages caused by a pre-existing condition and those caused by an accident for which the defendant is responsible. 4A *Minnesota Practice*, CIVJIG 91.40 use note (Supp. 2004). If the district court determines that there is a reasonable basis for apportionment, the use note recommends giving instead an alternative instruction that directs the jury to "award the plaintiff only those damages that were caused by defendant's negligence." *Id.*

We believe that it would be the exceptional case in which there is no reasonable basis for apportionment. " '[S]o long as there is some modicum of evidence that would permit the factfinder to make a causal apportionment, that course is preferable to making whichever party bears the burden of proof to bear the entirety of the loss.' " *Morlock*, 650 N.W.2d at 165 (Russell Anderson, J., dissenting (quoting Restatement (Third) of Torts: Liability for Physical Harm § 28 cmt. d(2) (Tentative Draft No. 2, 2002))). But if it is for those exceptional cases that the CIVJIG jury instruction has been rewritten, then the exception has significantly dominated the rule. The current version of 91.40 does not state that the defendant is liable for all damages caused by the accident *only* if the jury determines that no reasonable causal apportionment can be made. Instead, the bracketed portion provides that "if you [the jurors] cannot separate damages caused by the pre-existing disability or

medical condition from those caused by the accident, then (defendant) is liable for all the damages." 4A *Minnesota Practice,* CIVJIG 91.40 (Supp. 2005). A jury may encounter a number of reasons why they cannot separate the damages that would not necessarily be caused by the fact that no reasonable causal apportionment exists. These reasons could include failure of proof, confusing or conflicting testimony, juror indecision, or juror disagreement. While other instructions may weigh against relying on these reasons, the aggravation instruction would appear to override those instructions and permit this type of consideration.

The facts of this case illuminate the problems addressed in *Morlock* and *Blatz* that attend the use of CIVJIG 91.40 in determining aggravation damages. Rowe admitted that she had a pre-existing medical condition for which she was undergoing chiropractic treatment at the time of the accident. She was therefore in the best position to furnish information of the degree to which that condition was aggravated by Munye's negligent act of striking her car. *See Morlock,* 650 N.W.2d at 165 (Russell Anderson, J., dissenting). The issue of her prior injuries does not constitute an affirmative defense for which Munye bears the burden of proof, but is only a defense to her allegations of liability, for which she retains the burden of proof. *See Leubner v. Sterner,* 493 N.W.2d at 122 (" 'Aggravation of a [pre-existing] physical condition' is a measure of damages, not a theory of liability, even if one puts the word 'negligence' in front of it."). Furthermore, the first two sentences of the current instruction do not provide jurors with much guidance in determining aggravation. It is for those reasons that many district court judges have returned to giving CIVJIG 163 rather than CIVJIG 91.40.

We now turn to the question of whether the error in the jury instruction was prejudicial. If an instruction is erroneous and an appellate court is unable to determine whether the error affected the jury, a new trial should be granted. *Lieberman v. Korsh,* 264 Minn. 234, 242, 119 N.W.2d 180, 186 (1962).

At trial both Rowe and Munye argued aggravation; Rowe as a means of recovery, and Munye as a means of mitigating damages. Both medical experts, Sheehan and Altafullah, presented testimony indicating that Rowe's injuries were aggravated by the accident. Consequently the erroneous instruction created a substantial potential for prejudice.

Rowe claims that Munye did not timely object to the use of CIVJIG 91.40 because he declined to submit alternative instructions to the court. But before the jury was instructed, Munye's counsel challenged the use of CIVJIG 91.40 and requested that the district court instead give CIVJIG 163, the previous version of the relevant jury instruction, an appropriate instruction for apportioning damages. Munye properly preserved the issue for appeal.

Rowe alternatively argues that the CIVJIG 91.40 instruction did not result in prejudice because the jury's fractional award of the requested damages indicates that it did apportion damages, separating damages resulting from the accident from those resulting from the pre-existing condition. The jury did award Rowe a smaller amount for medical expenses than the evidence indicated that she incurred, perhaps apportioning those expenses between her pre-existing condition and damages occurring as a result of the accident. The jury also awarded a smaller amount of

damages than Rowe claimed as "directly caused by the accident" for past and future pain, disability, and emotional distress.

But we can not reasonably determine whether or how the jury applied the instruction. We do not know if the jury apportioned these damages between the accident and the pre-existing condition, or whether the jury simply determined that Rowe was not entitled to the full amount of damages she claimed as a result of the accident. Therefore, because we are unable to tell if the erroneous instruction influenced the jury in their determination of damages, a new trial is warranted. *Lieberman*, 264 Minn. at 242, 119 N.W.2d at 180. We note, however, that the instruction would not have affected the jury's affirmative findings on permanent-injury and sixty-day-disability thresholds. For that reason, it is unnecessary to retry those issues, and retrial is limited to the amount of new damages that Rowe sustained in the accident together with damages for any aggravation of her pre-existing condition over and above those which would normally follow from the pre-existing condition, had there been no accident.

## DECISION

The jury instruction for aggravation of personal damage provided in CIVJIG 91.40 which instructs the jury that "if you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then defendant is liable for all the damages" misstates the law as it applies to apportionment of damages caused by a single at-fault defendant and those caused by a pre-existing condition or disability. Because the district court erroneously instructed the jury using CIVJIG 91.40 and we cannot reasonably determine whether the er-

roneous instruction influenced the jury in their damages determination, we reverse and remand for a new trial.

**Reversed and remanded.**