Cheryl ROWE, Appellant,

v.

Mohamed MUNYE, Respondent,

Employers Insurance Company/Dakota Fire Insurance Company, Defendants.

No. A03–465.

Supreme Court of Minnesota.

Aug. 18, 2005.

Michael D. Tewksbury, Darin S. Wieneke, Tewksbury, Kerfeld, Zimmer Minneapolis, MN, for Appellant.

Terrence R. Peterson, Corrine L. Evenson & Associates, St. Paul, MN, for Respondent.

William M. Hart, Damon L. Highly, Meagher & Geer, PLLP, Minneapolis, MN, for Amicus Curiae MN Defense Lawyers Ass'n.

## OPINION

ANDERSON, PAUL H., Justice.

In the case before us, we must determine whether using CIVJIG 91.40 to instruct a jury on aggravation of a preexisting injury or condition improperly shifts to the defendant the burden of apportioning a plaintiff's automobile accident injuries and her preexisting injuries. The subject of this action is an automobile accident that occurred when a vehicle driven by Mohamed Munye rear-ended Cheryl Rowe's vehicle. Claiming that she suffered injuries from this accident, Rowe sued Munye for negligence. At trial, Rowe requested CIVJIG 91.40 to instruct the jury on aggravation because she claims her injuries from the accident aggravated injuries that preexisted the accident. Munye objected, contending that CIVJIG 91.40 misstates Minnesota law and impermissibly shifts the burden of proof from Rowe to him. The Hennepin County District Court granted Rowe's request and included CIVJIG 91.40 in its instructions to the jury. The jury then awarded Rowe damages for medical expenses, pain, disability, and emotional distress. Munye moved for

a new trial, arguing that CIVJIG 91.40 was an improper and prejudicial instruction. The court denied Munye's motion and he appealed. The Minnesota Court of Appeals reversed and remanded for a new trial on damages. *Rowe v. Munye,* 674 N.W.2d 761 (Minn.App.2004). We affirm the court of appeals.

On November 21, 1999, as appellant Cheryl Rowe was making a left turn, respondent Mohamed Munye hit her vehicle from behind with his car. Munye initially claimed that he hit Rowe only because an unidentified vehicle pushed him into Rowe's car. Rowe claimed that she suffered neck and shoulder injuries from this accident and sued Munye for negligence. Because Munye asserted that the unidentified vehicle caused the accident, Rowe also initially sued her insurance company, Employers Mutual Insurance Company/Dakota Fire Insurance Company, under the unidentified/uninsured driver terms of her policy. The district court subsequently dismissed Munye's defense with prejudice when Munye repeatedly failed to cooperate with court instructions and discovery orders. Munye eventually conceded that he "bore complete and undisputed liability" for the accident. Thus, the only issue left for the jury to decide was the issue of damages.

At trial, Rowe testified about the accident and her resulting injuries. She testified that immediately after the accident, she had a headache and a sore neck, which continued to worsen. Rowe also claimed that as a result of the accident she developed a persistent numbness in her arm and hand. She testified that chiropractic treatment from Dr. Kelly Sheehan has provided some relief from her symptoms. An MRI scan taken in April 2000 showed a herniated disc in her neck. In June 2000, neurologist Dr. Ronald Tarrel examined Rowe and told her that surgery was not necessary, but that she could continue the chiropractic treatments. Rowe continued treatments with Dr. Sheehan about once a month.

Dr. Sheehan testified that he believes Rowe suffers from permanent injuries to her neck and upper back because of the accident and will need continuing supportive care at an annual cost of approximately $1,950. He testified that while some of Rowe's x-rays show a preexisting degenerative joint disease, her back problems before the accident would not have been permanent. He did testify, however, that Rowe would have probably needed continued "maintenance" care based on her preaccident injuries. Dr. Sheehan concluded that Rowe's injuries were both caused by and aggravated by the accident with Munye.

Neurologist Dr. Irman Altafullah, who independently examined Rowe on February 19, 2002, testified for Munye. Dr. Altafullah stated that he believes the accident did not cause Rowe to suffer from either a permanent injury or a permanent aggravation of a preexisting injury and that her degenerative back changes had developed over a long period of time. He did say, however, that he believes that the accident might have caused Rowe to suffer temporary aggravating injuries. He based his opinion on the nature of the accident, Rowe's symptoms and improvement over time, and his examination, which, he said, did not reveal any objective findings of permanent injury.

Rowe's preexisting injuries involved back, shoulder, and neck pain and headaches. For about 20 years before the accident with Munye, Rowe had periodically received chiropractic care for chronic neck and back discomfort. Her most recent visit to Dr. Sheehan was just a few days before the accident. In 1975, Rowe had been in a car accident, in which she

was thrown against the windshield and broke two of her teeth. She also fell off a motorcycle in 1965. Rowe stated, however, that she suffered no lingering injuries from either of those earlier accidents. Despite her previous medical treatment for her back and neck, she testified that for a couple of weeks before the accident with Munye occurred, she had "felt really great" and "better than [she] had in a long time."

Rowe also testified that her injuries from the accident with Munye have caused her to limit her involvement in activities and that she believes her life is more limited than it was before the accident. She claimed that, since the accident, she tires more quickly and has had to significantly curtail her volunteer work. Munye tried to show that Rowe's injuries did not limit her activities and he attempted to prove that Rowe's injuries were not severe because the impact from the accident was only a jolt and it did not cause her to hit anything inside her car. Rowe requested $79,000 in damages: $6,000 for past medical expenses; $15,000 for past pain, disability, and emotional distress; $52,000 for future pain, disability, and emotional distress; and $6,000 for future medical expenses.

Rowe requested CIVJIG 91.40 because she claimed that the accident aggravated her previous back and neck problems. 4A Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil,* CIVJIG 91.40 (4th ed. 1999 & Supp. 2005).[1] She did not claim that her aggravated injuries were not apportionable from

her preexisting injuries. Munye did not submit any proposed jury instructions, but just before jury deliberations, he objected to Rowe's request for CIVJIG 91.40, stating that he believed the instruction misstates Minnesota law. Munye argued that the instruction's third sentence impermissibly shifts the burden of proving Rowe's injuries to him. Instead of CIVJIG 91.40, Munye requested that the court give the now replaced 1986 CIVJIG 163 to the jury because the former instruction did not impermissibly shift the burden of proof to the defendant. 4 Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil,* CIVJIG 163 (3d ed.1986). CIVJIG 163 was the jury instruction on aggravation from the Third Edition of the civil jury instruction guide and was replaced by CIVJIG 91.40 in the Fourth Edition.

The district court granted Rowe's request and instructed the jury using the exact language of CIVJIG 91.40, only adding Rowe's and Munye's names. The court's instructions on aggravation read as follows:

> There is evidence that Cheryl Rowe had a pre-existing disability or medical condition at the time of the accident.
>
> Mohamed Munye is liable only for any damages that you find to be directly caused by the accident.
>
> If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then Mohamed Munye is liable for all of the damages.

---

1. The *Jury Instruction Guides—Civil* is a volume of civil jury instructions that have been discussed and reviewed by a group of approximately 20 trial judges and published under the guidance of the Minnesota District Judges' Association. The First Edition was published in 1963, the Second in 1974, the Third in 1986, and the Fourth in 1999. The jury instruction guides have been created so that trial judges have an available resource, written in language understandable by lay juries, to instruct juries on the substantive law. The guide, however, explicitly states that it is only a guide and that judges should not rely on it as their exclusive source for substantive law.

The jury found that Rowe had sustained a permanent injury and a 60–day disability as a result of the accident, but not medical expenses in excess of $4,000. It awarded her $24,500: $7,500 for past pain, disability, and emotional distress; $13,000 for future pain, disability, and emotional distress; and $4,000 for future health care costs and expenses. On November 14, 2002, the district court entered judgment for Rowe.

Munye moved for a new trial, claiming that the district court erred when it gave CIVJIG 91.40 because the instruction caused him prejudice. He objected to CIVJIG 91.40, arguing that it (1) misstates Minnesota law pursuant to a court of appeals decision, *Blatz v. Allina Health Sys.*, 622 N.W.2d 376 (Minn.App.2001), *rev. denied* (Minn. May 16, 2001); and (2) unfairly prejudices his right to a fair trial by impermissibly shifting to him the burden of proving apportionment of damages. The court denied Munye's motions and he appealed.

The court of appeals reversed the district court, concluding that CIVJIG 91.40 "impermissibly imposes on an at-fault defendant the burden of proving that he did *not* cause the portion of plaintiff's damages attributable to a pre-existing disability or condition." *Rowe*, 674 N.W.2d at 767–68. The court went on to conclude that it could not determine whether the erroneous instruction influenced the jury in the award of damages. *Id.* at 770. Therefore, the court of appeals remanded for a new trial, but limited the scope of the trial to a determination of the amount of damages that Rowe sustained from the accident over and above the damages that normally would have followed from her preexisting condition. *Id.*

Rowe appeals to our court, contending that CIVJIG 91.40 is appropriate because it clearly and accurately states Minnesota law and ensures consistent jury instructions. Alternatively, she contends that CIVJIG 91.40 did not prejudice Munye because the jury appropriately separated the preexisting injury from the aggravation of that injury. Munye requests that we affirm the court of appeals' decision to grant him a new trial on damages. He also requests that we conclude that CIVJIG 91.40 constitutes prejudicial error when given to the jury in a case with one liable defendant and a plaintiff who asserts aggravation of a preexisting injury.

I.

■■■■ We review a district court's decision on jury instructions under an abuse of discretion standard. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn.2002). District courts generally have "considerable latitude" in choosing jury instructions. *Morlock v. St. Paul Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn.2002). But a court errs if it gives a jury instruction that materially misstates the law. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001).

■■■■ We begin our analysis with a brief summary of our case law on the burden of proof and aggravation of preexisting injuries. In a negligence action, the plaintiff generally has the burden of proving, by a preponderance of the evidence, damages caused by the defendant. *Canada by Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn.1997); *see also* 4A Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil*, CIVJIG 90.15 (4th ed. 1999) ("A party asking for damages must prove the nature, extent, duration, and consequences of his or her (injury) (harm)."). The plaintiff must demonstrate with reasonable certainty the nature and probable duration of the injuries sustained. *Canada by Landy*, 567 N.W.2d at 507.

When an accident involves aggravation of preexisting injuries, we have required the defendant to pay only for the damages he or she caused over and above the consequences that would have occurred from the preexisting injury if the accident had not occurred. *See, e.g., Nelson v. Twin City Motor Bus Co.*, 239 Minn. 276, 280, 58 N.W.2d 561, 563 (1953). In *Schore v. Mueller*, we said:

> Our rule is that a person who has a preexisting disability is entitled to recover damages for an aggravation of that condition even though the particular consequences would not have followed absent his prior disability, recovery being limited, however, to the additional injury over and above the consequences which normally would have followed from the preexisting condition absent defendant's negligence.

290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971).

■ In aggravation cases, we have also indicated that the burden of proof remains on the plaintiff because aggravation is not an affirmative defense which shifts the burden to the defendant. *See Leubner v. Sterner*, 493 N.W.2d 119, 122 (Minn.1992). We have said, " '[a]ggravation of a preexisting physical condition' is a measure of damages, not a theory of liability, even if one puts the word 'negligent' in front of the phrase." *Id.* Thus, our case law is clear that the burden remains on the plaintiff in cases involving aggravation of a preexisting injury.

A limited situation where we have shifted the burden to the defendant involves the single indivisible injury rule set forth in *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970). In *Mathews*, we said that multiple defendants are jointly and severally liable when they, through independent consecutive acts of negligence closely related in time, cause indivisible injuries to the plaintiff. *Id.* at 20–21, 178 N.W.2d at 844. In *Mathews*, the plaintiff was injured in a highway chain collision involving multiple defendants. *Id.* at 18–19, 178 N.W.2d at 842–43. We held that where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the defendants seeks to limit his or her liability by claiming that the harm is capable of apportionment, the burden of proving the apportionment is on the defendant(s). *Id.* at 22, 178 N.W.2d at 845. We recently applied *Mathews* in *Canada by Landy*, where we placed the burden of proving apportionment on a jointly and severally liable landlord who caused lead poisoning injuries to a child. *Canada by Landy*, 567 N.W.2d at 507–08. Our holdings in *Mathews* and *Canada by Landy* are consistent with the Restatement (Second) of Torts, which only shifts the burden of proof to the defendant in situations that involve the combined tortious conduct of two or more actors who are seeking to limit their liability for the harm they have caused the plaintiff.[2] Restatement (Second) of Torts

---

**2.** Restatement (Second) of Torts § 433 B (1965) provides:

(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.

(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of appor-

tionment among them, the burden of proof as to the apportionment is upon each such actor.

(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

§ 433 B (1965); *see also Morlock,* 650 N.W.2d at 165.

■ It is within this contextual framework that we need to examine CIVJIG 91.40. CIVJIG 91.40 is designed to be given in cases involving aggravation of preexisting injuries. It reads:

There is evidence that (plaintiff) had a pre-existing disability or medical condition at the time of the accident.

(Defendant) is liable only for any damages that you find to be directly caused by the accident.

*[If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then (defendant) is liable for all of the damages.]*

CIVJIG 91.40 (emphasis added). The parties disagree on whether the instruction's third sentence misstates Minnesota law because it shifts the burden of separating damages to the defendant. The third sentence instructs the jury to find the defendant liable for all damages when the jury is unable to apportion the plaintiff's injuries between the injuries caused by the defendant and the plaintiff's preexisting injuries.

■ Because Munye believes the third sentence of CIVJIG 91.40 misstates Minnesota law, he requested that the district court instruct the jury using the Third Edition's instruction on aggravation, CIVJIG 163, which reads:

A person who has a defect or disability at the time of an accident is nevertheless entitled to damages for any aggravation of such pre-existing condition, even though the particular results would not have followed if the injured person had not been subject to such pre-existing condition. Damages are limited, however, to those results which are over and above those which normally followed from the pre-existing condition, had there been no accident.

4 Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil,* CIVJIG 163 (3d ed.1986). We have previously cited CIVJIG 163 as a proper statement of Minnesota law. *Leubner,* 493 N.W.2d at 122. CIVJIG 91.40 and CIVJIG 163 conflict to the extent that CIVJIG 91.40 places the burden to apportion the damages on the defendant. CIVJIG 163 does not provide any explicit default rule when the jury cannot apportion damages; thus, under CIVJIG 163, the burden of proof remains on the plaintiff.

We previously looked at CIVJIG 91.40 in *Morlock,* when we determined that the district court erred when it gave CIVJIG 91.40 to the jury because neither party's theory of the case required the jury to distinguish between a preexisting condition and any aggravation caused by the defendant's negligence. 650 N.W.2d at 161. The plaintiff had contended that a car accident caused all of his injuries and the defendant argued that the accident caused none of the plaintiff's ongoing injuries. *Id.* at 156–58. We therefore did not decide whether CIVJIG 91.40 misstated Minnesota law, but we suggested that "it may be possible that CIVJIG 91.40 could be inappropriate in a situation where a plaintiff is seeking both 'new' damages and damages for aggravation of an admitted to preexisting condition." *Id.* at 161–62. In this case, Rowe's theory is that she was injured in the November 1999 accident with Munye and that these injuries aggravated her preexisting back problems. Unlike *Morlock,* Rowe's theory requires the jury to distinguish between new and preexisting injuries; therefore, we now must decide whether CIVJIG 91.40 is a correct statement of law.

Rowe argues that CIVJIG 91.40 is a better statement of law than CIVJIG 163 because "it ensures that parties support their theories and/or defenses." She claims that CIVJIG 91.40 still requires the plaintiff to satisfy her burden of proof, but it "does not allow the defendant to simply muddy the issues and/or confuse the jury in hope of preventing a recovery." Rowe asserts that the burden for the failure to prove damages should not fall on the innocent plaintiff, but rather on the at-fault defendant. She maintains that the underlying rationale of CIVJIG 91.40 should not be limited to cases where multiple tortfeasors are jointly and severally liable; rather, the reasoning of *Mathews* and *Canada by Landy* should be extended to include the situation before us. In those two cases involving jointly and severally liable tortfeasors, we placed the burden on the defendant to prove apportionment of damages. Rowe asserts that the standard for the jury should be the same whether the accident involved jointly and severally liable tortfeasors or whether it involved a single tortfeasor and an innocent cause, such as a preexisting injury. She claims that there is no basis or justification for the different standards.

Munye, however, argues that CIVJIG 91.40 misstates Minnesota law because it erroneously combines joint and several liability rules with aggravation of preexisting injury rules and improperly shifts the burden of proving damages from the plaintiff (Rowe) to the defendant (Munye). He claims that Minnesota law requires that a plaintiff who asserts aggravation of a preexisting injury must prove that the defendant caused damage over and above the preexisting injury and that CIVJIG 91.40 "completely erases the plaintiff's burden of proof in aggravation cases by shifting that burden to the defendant."

Munye also claims that Minnesota law has never shifted the burden of proof to the defendant in cases involving a single defendant who caused aggravation of a preexisting injury, as is the case here. He states that only one exception allows the burden of proof to be shifted from the plaintiff to the defendant. For this exception, Munye relies on the court of appeals decision in *Blatz* for two requirements: (1) joint and several tortfeasors, and (2) single indivisible damages. *See* 622 N.W.2d at 390. He contends that *Blatz* was correctly decided and asserts that the policy reason for this exception—that the plaintiff should not be prejudiced for failing to know the precise apportionment of damages caused by multiple tortfeasors—is not present in aggravated injury cases. Moreover, he claims that in an aggravated injury case, the plaintiff is in the best position to know the extent of the preexisting injuries and the degree of aggravation. We agree that our case law supports Munye's position.

In cases where the jury cannot apportion the plaintiff's new injuries from the plaintiff's preexisting injuries, CIVJIG 91.40 shifts the burden of proving the extent of the new injuries to the defendant. Thus far, we have shifted the burden to the defendant only in cases involving multiple tortfeasors who were jointly and severally responsible for a single injury to the plaintiff. *See Mathews*, 288 Minn. at 21, 178 N.W.2d at 844; *Canada by Landy*, 567 N.W.2d at 507–08. The case before us today, however, does not trigger the single indivisible injury rule set forth in *Mathews*. Here, only one defendant is involved and the injuries were not closely related in time.

We do not agree with the assertion that CIVJIG 91.40 finds its basis for support in *Canada by Landy*, an application of the

rule in *Mathews*.[3] In *Canada by Landy*, a child had suffered repeated lead poisoning at multiple dwellings owned by different defendants. 567 N.W.2d at 499. The appellant/defendant in *Canada by Landy* had been negligent in performing lead abatement cleanup. *Id.* at 508. We held that, when the district court determined that the child's lead poisoning injuries could be divided between two different points in time, the defendant had the burden to prove that his acts did not cause the plaintiff's injuries. *Id.* at 507–08. In reaching our decision, we followed *Mathews*, and placed on the defendant, who was jointly and severally liable for the damages, the burden of proving that the plaintiff's injuries could be apportioned. *Id.* We further noted that, under "the facts of this case," the defendant also had the burden of apportioning damages related to aggravation of the child's preexisting injuries. *Id.* at 508. To the extent that Rowe reads *Canada by Landy* to place the burden of proof on the defendant in *all* cases involving aggravation of a preexisting injury, her reading is too broad. Thus, for us to conclude that CIVJIG 91.40 is an appropriate statement of the law in this case, we would need to extend the rationale of *Mathews* and *Canada by Landy* to all cases involving aggravation where the jury needs to apportion the plaintiff's injuries.

If we were to extend the law to follow Rowe's arguments, Minnesota courts and juries would no longer need to distinguish between aggravation of a preexisting injury and the single indivisible injury rule with multiple tortfeasors. In each of these cases, the defendant would have the burden to prove that he or she had not caused all of the damages to the plaintiff. Essentially, we would "let the tie go to the plaintiff" to ensure that the plaintiff is not undercompensated and we would treat a plaintiff with preexisting injuries the same as a plaintiff who is injured by jointly and severally liable tortfeasors.

But treating the plaintiffs the same in these situations ignores differences that become important when viewed in light of three policies woven through our case law: (1) the policy of protecting the innocent plaintiff over the tortfeasor, *Mathews*, 288 Minn. at 22, 178 N.W.2d at 845; (2) the policy of ensuring that the defendant is responsible only for the damages that he or she caused, *Leubner*, 493 N.W.2d at 122; and (3) the policy of placing the burden on the party with the greater amount of information, *Morlock*, 650 N.W.2d at 165; *see also Mathews*, 288 Minn. at 24, 178 N.W.2d at 846. Placing the burden on the defendant in all situations where the jury is unable to separate the damages would further the first policy, but would disregard the other two.

We conclude that extending the rationales of *Mathews* and *Canada by Landy* to aggravation cases that involve only one defendant could have the tendency to over-

---

**3.** The use note to CIVJIG 91.40 no longer claims that the instruction has a basis in *Canada by Landy*. Although we declined to decide the correctness of CIVJIG 91.40 in *Morlock*, the Committee on Jury Instruction Guides subsequently modified CIVJIG 91.40 and rewrote the accompanying use note. *See* 4A Minnesota District Judges Association, *Minnesota Practice, Jury Instruction Guides—Civil*, CIVJIG 91.40 (4th ed. Supp.2005). It appears that the committee surrounded the last sentence of CIVJIG 91.40 with brackets to reflect the fact that we had not definitively decided the issue of burden of proof in cases where there is no basis for apportionment and because the court of appeals had determined that the third sentence of CIVJIG 91.40 misstates Minnesota law. *See id.* Previously, the use note stated that "the burden of apportioning damages appears to be with the defendant." The basis cited for this earlier language was our decision in *Canada by Landy*, 567 N.W.2d at 496. *See* CIVJIG 91.40.

compensate the plaintiff. A critical fact of both *Mathews* and *Canada by Landy* was that there were multiple defendants who were jointly and severally liable for 100% of the harm. Jointly and severally liable defendants already bear the risk of failure of proof because, if they are not able to prove that the damages can be apportioned, they are each liable for all of the damages. *See* Dan B. Dobbs, *The Law of Torts* § 170 at 412–14 (2000). The single defendant does not bear the same risk in an aggravation case, where the defendant is liable only for the damages that he or she caused. *Schore*, 290 Minn. at 189, 186 N.W.2d at 701.

Placing the burden of apportionment on the plaintiff when multiple defendants are jointly and severally liable would serve no purpose because in that situation, the defendants are jointly liable for 100% of the harm and are only trying to reduce their individual liability relative to other defendants. In a case of a single defendant and aggravation of a preexisting injury, however, the allocation must be between the defendant and the plaintiff. *See Mayer v. N. Arundel Hosp. Ass'n*, 145 Md.App. 235, 802 A.2d 483, 494 (2002). Because there is no presumption that the defendant caused

100% of the plaintiff's damage, shifting the burden to the defendant could force the defendant to pay for damages he did not cause. Thus, CIVJIG 91.40 is not the next logical step after *Canada by Landy* because different concepts are involved.[4]

■ Additionally, in a case involving aggravation of a preexisting injury, the plaintiff is likely to have more knowledge than the defendant of the extent of the preexisting injury. But, where there are multiple tortfeasors and injuries that are closely related in time, the plaintiff and the defendant will start at approximately the same point of knowledge. We conclude that, in the former circumstances, to require the defendant to separate the new injury from the preexisting injury improperly places the burden on the party with the lesser amount of information and again might have the tendency to overcompensate the plaintiff.

■ The dissent claims support for its argument that the burden of proof should be shifted to the defendant under CIVJIG 91.40 by using cases involving the eggshell plaintiff doctrine. *See, e.g., Wolbers v. Finley Hosp.*, 673 N.W.2d 728 (Iowa 2003).[5] But the eggshell plaintiff

**4.** It appears that the dissent misreads Restatement (Second) of Torts § 433 B(2), cmt. d, in stating that the Restatement shifts the burden or that the majority concedes any shifting of the burden to the defendant in single-defendant aggravation situations. Comment d provides the policy reason for shifting the burden to defendants when "two or more actors" are involved in the tortious conduct. *See id.; see also Foggia v. Des Moines Bowl–O–Mat, Inc.*, 543 N.W.2d 889, 894 (Iowa 1996) (discussing the inapplicability of § 433 B to situations involving only one tortfeasor). Moreover, the dissent's interpretation that § 433 B(2) applies to situations involving a single tortfeasor and aggravation of preexisting injuries would lead to odd results because, in order to fulfill the "two or more actors" requirement that is explicit in § 433 B(2), the burden of proof

could be shifted to the defendant who caused the aggravation only where the preexisting injury was caused by a second tortfeasor. But not all preexisting injuries will have been caused by a second tortfeasor. The dissent's reading would therefore allow the defendant to be "given a break" in situations where the preexisting injury did not involve a second tortfeasor. Thus, the most logical and consistent reading of comment d is as an application of the *Mathews* single indivisible injury rule involving *multiple* defendants who are jointly and severally liable.

**5.** Although there is support for the dissent's position in case law from other jurisdictions, the dissent overstates that support. First, the dissent overstates the authority by saying that "Minnesota chooses a path rejected by every court but Iowa and Maryland." Some states

doctrine and CIVJIG 91.40, which shifts the burden to the defendant, involve distinguishable concepts.[6] The eggshell plaintiff doctrine states that "[w]here a tort is committed, and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health." *Ross v. Great N. Ry. Co.*, 101 Minn. 122, 125, 111 N.W. 951, 953 (1907). The eggshell plaintiff doctrine is not a mechanism to shift the burden of proof to the defendant; rather, it makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more susceptible to injury because of a preexisting condition or injury. Under this doctrine, the eggshell plaintiff still has to prove the nature and probable duration of the injuries sustained. *Cf. Canada by Landy*, 567 N.W.2d at 507. We note that other courts also recognize that the two concepts are differ-

ent. Iowa recognizes the eggshell plaintiff doctrine, but does not shift the burden of proving apportionment to the single defendant in injury aggravation cases. *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 577 (Iowa 1997); *Foggia v. Des Moines Bowl–O–Mat, Inc.*, 543 N.W.2d 889, 893–94 (Iowa 1996). Our decision today in no way changes our case law on the eggshell plaintiff doctrine.

██ We recognize that it is conceivable that a person could have both an injury that involves aggravation of a preexisting injury and an injury that was more severe because the plaintiff was more susceptible to injury.[7] In fact, this was the case in *Waits*, where the Iowa Supreme Court held that a jury could receive instructions on both the eggshell plaintiff doctrine and on aggravation of a preexisting injury. 572 N.W.2d at 578. But, in recognizing the difference between the concepts, the Iowa court properly required that the jury be provided additional guidance on how to

have not decided the issue; courts cannot reject what they have not decided. Second, the dissent has overstated the degree of support for its position in the cases it cites. For example, the Supreme Court of Hawaii determined that the jury should make a rough apportionment of damages and did not place all the responsibility on the defendant. *See Montalvo v. Lapez*, 77 Hawai'i 282, 884 P.2d 345, 363 (1994). Moreover, the Supreme Court of Alaska stated that it would only place the entire burden on the defendant upon a showing of "compelling injustice" to the plaintiff because it is such an "extreme measure" to place the burden on the defendant. *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 632 P.2d 539, 545 (Alaska 1981). In *LaMoureaux*, the court did not find that a compelling injustice had occurred and therefore did not place the burden on the defendant in that case. *Id.*

6. We note that while some courts have combined discussions of the eggshell plaintiff doctrine with shifting the burden of proving apportionment to the defendant when apportionment between new injuries and a preex-

isting condition is not possible, *see, e.g., Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 813 (1963), at least one court has also placed the burden on the plaintiff to prove that the apportionment is impossible. *See McDonald v. United Airlines, Inc.*, 365 F.2d 593, 594 (10th Cir.1966).

7. We are expressing no opinion on whether the eggshell plaintiff doctrine was inapt in this case because that issue is not before us. Rowe did not claim that she was an eggshell plaintiff. The dissent, however, is incorrect to state conclusively that Rowe did not continue to suffer from back and neck problems before the accident with Munye—in fact, Rowe sought chiropractic treatment only a few days before the accident. Moreover, Rowe's theory suggests that her injury involves an aggravation of a preexisting injury. If she had been entirely asymptomatic, we would not have the issue before us. *See Morlock*, 650 N.W.2d at 161 (determining that deciding CIVJIG 91.40 issue was not ripe because no party claimed aggravation of a preexisting injury).

interpret both instructions. *Id. Waits* illustrates that the eggshell plaintiff doctrine and the burden-shifting mechanism of CIVJIG 91.40 should not be confused.

■■■ We agree that a defendant should be responsible for the harm that the defendant caused even if the harm is more severe because the plaintiff is more susceptible to injury—the eggshell plaintiff doctrine. But it does not follow, in a case involving aggravation of a preexisting injury, that a defendant should also pay for the preexisting injury. The defendant should pay for the aggravation, but not for the preexisting injury or condition. *See* Dobbs, supra, § 188 at 465. It is incorrect to assert that the defendant is "given a break" when the plaintiff is held to prove the extent and nature of her injuries. This is traditionally where we have placed the burden of proof under our tort law. Moreover, it would be improper to make the defendant responsible for proving any apportionment between the preexisting injury and the new injury when the plaintiff has superior knowledge of the preexisting injury.

■■■ We share the dissent's concerns that the plaintiff not be undercompensated when a jury has difficulty separating the plaintiff's injuries caused by the defendant from her preexisting injuries, but we conclude that CIVJIG 91.40 is not the proper solution. CIVJIG 91.40 tries to do too much by casting a wider net than just those cases where apportionment is not possible. The third sentence of CIVJIG 91.40 attempts to address the situation when the jury "cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident" and is not intended to shift the burden to the defendant in every case. But, when confusing or con-

flicting testimony, jury indecision, or juror disagreement could lead to the jury's inability to separate damages, we believe, rather than placing all uncertainty on the defendant, the better option is for the jury to make a rough apportionment so that the plaintiff receives fair compensation for her injuries. *See Montalvo v. Lapez*, 77 Hawai'i 282, 884 P.2d 345, 363 (1994) (concluding that the jury should be instructed to roughly apportion between injuries a plaintiff received in separate accidents). We agree with the court of appeals that "it would be the exceptional case in which there is no reasonable basis for apportionment." *Rowe*, 674 N.W.2d at 768; *see also* Dobbs, supra, § 174 at 425 (noting that surprising bases for apportionment can be found).

■■■ To sum up our analysis, we conclude that CIVJIG 91.40 creates confusion for the jury and blurs the distinctions among a plaintiff with an aggravation of a preexisting injury, a plaintiff injured by joint and several tortfeasors, and the eggshell plaintiff doctrine. Adoption of CIVJIG 91.40 would change our case law and would shift the burden of proving apportionment to the defendant in cases involving a single defendant and aggravation of a preexisting injury. We choose not to do so. The defendant should be responsible only for the injuries that are legally caused by the defendant's negligence. CIVJIG 91.40 goes too far by making the defendant responsible for injuries that he did not cause. We therefore hold that the district court erred in giving CIVJIG 91.40 to the jury and that CIVJIG 91.40, as presently written, misstates Minnesota law on the defendant's burden of proof in a case involving one defendant and aggravation of the plaintiff's preexisting injury or condition.[8]

---

8. We further note another potential danger in    CIVJIG 91.40. The third sentence of CIVJIG

## II.

Our conclusion that the district court erroneously gave the jury an instruction that misstates the law does not end our analysis in this case. A complainant will not receive a new trial for errors in jury instructions unless the error was prejudicial. *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn.1986). Therefore, we must determine whether Munye was prejudiced by the giving of this instruction. In determining whether erroneous instructions resulted in prejudice, we must construe the instructions as a whole from the standpoint of the total impact on the jury. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 48 (Minn.1997). We will, however, give the complainant the benefit of the doubt by granting the complainant a new trial if the effect of the erroneous instruction cannot be determined. *See Morlock*, 650 N.W.2d at 159.

Rowe argues that, if the district court erred in giving CIVJIG 91.40, the error was not prejudicial to Munye because (1) the jury's finding of permanent injury to Rowe refutes the defendant's argument that Rowe suffered no permanent injury; and (2) the jury did not have to rely on the last sentence of CIVJIG 91.40 because it "clearly apportioned the damages." Rowe contends that, because the jury awarded her only a portion of the damage award she requested, the jury did "in fact separate the pre-existing from the aggravation injuries" and Munye suffered no prejudice.

Munye argues that CIVJIG 91.40 caused him substantial prejudice because this instruction misstated his burden of proof. He contends that any argument that the jury may have apportioned the damages between the new damages and those that existed before the accident "is purely speculative." As a result, he asserts that because the total impact of CIVJIG 91.40 on the jury cannot be determined, he is entitled to a new trial.

We conclude that Munye has the stronger argument. Because the jury was not properly instructed on aggravation of injuries caused by the accident over Rowe's preexisting injuries, we cannot determine how the jury decided the question of damages. Although Rowe did not explicitly argue that her new injuries were not apportionable from her preexisting injuries, because of the potential confusion created by CIVJIG 91.40, we cannot necessarily conclude that the jury did not rely on CIVJIG 91.40's third sentence. The award could reflect that the jury did not apportion the damages, but found that Rowe's claimed damages were excessive, or it could reflect that the jury did apportion Rowe's injuries. The jury verdict does not specify which of these options is correct. We therefore hold that because we cannot determine the total effect of CIVJIG 91.40 based on the information before this court, Munye is entitled to a new trial on damages.

Affirmed.

BLATZ, C.J., took no part in the consideration or decision of this case.

91.40 instructs the jury, "[i]f *you* cannot separate damages caused by the preexisting disability or medical condition from those caused by the accident, then (defendant) is liable for all of the damages." (Emphasis added.) In instructing the jury to determine whether the damages can be apportioned, CIVJIG 91.40 improperly usurps the domain of the judge. "Whether the injury is capable of apportionment is a question of law. Once the trial court finds that the harm can be apportioned, the question of actual apportionment is a question of fact for the jury." *Canada by Landy*, 567 N.W.2d at 507–08 (internal citations omitted); *see also* Restatement (Second) of Torts § 434(1)(b).

ANDERSON, RUSSELL A., Justice (concurring).

I concur in the result but write separately to express my view of the underlying principles that support the conclusion that CIVJIG 91.40 not only improperly permits application of collective liability principles in single plaintiff/single tortfeasor cases but also allocates to the jury the determination of divisibility of harms, a judicial function.

In Minnesota the defendant is liable only for the extent to which his conduct has aggravated the preexisting condition. *Watson v. Rheinderknecht*, 82 Minn. 235, 238, 84 N.W. 798, 799 (1901); *Schore v. Mueller*, 290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971) (plaintiff with a preexisting condition is entitled to recover damages for an aggravation of that condition, "recovery being limited, however, to the additional injury over and above the consequences which normally would have followed from the preexisting condition absent defendant's negligence."). The burden has long been upon the plaintiff to distinguish harm caused by the defendant "over and above" the original condi-

tion. *Watson*, 82 Minn. at 238, 84 N.W. at 799 (burden was upon the plaintiff "to show in what respect, and to what extent, his present condition could be attributed to the assault and battery, and what could be more properly established as the result of his army experience.").

For over 30 years our pattern jury instruction summarized the law related to the measure of damages for an aggravation of a preexisting condition as limited to the additional injury caused by the defendant's conduct. 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 163 (3d ed.1986).[1] But the current pattern jury instruction, CIVJIG 91.40,[2] permits allocation of liability to the defendant for harm for which the defendant was in no way responsible. The original commentary to CIVJIG 91.40 suggested that the instruction was derived from *Canada by Landy v. McCarthy*, 567 N.W.2d 496 (Minn.1997). I read *Canada*, however, as involving a unique application of collective liability principles in which joint and several liability was imposed upon multiple tortfeasors. *Canada*, 567 N.W.2d at 507–08.[3]

1. From 1963 through 1999, CIVJIG 163 covered damages in cases of preexisting conditions:

> A person who has a defect or disability at the time of an accident is nevertheless entitled to damages for any aggravation of such pre-existing condition, even though the particular results would not have followed if the injured person had not been subject to such pre-existing condition. Damages are limited, however, to those results which are over and above those which normally followed from the pre-existing condition, had there been no accident.

4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 163 (3d ed.1986).

2. The current pattern jury instruction, CIVJIG 91.40, provides:

> There is evidence that (plaintiff) had a preexisting disability or medical condition at the time of the accident.
> (Defendant) is liable only for any damages that you find to be directly caused by the accident.
> [If you cannot separate damages caused by the pre-existing disability or medical condition from those caused by the accident, then (defendant) is liable for all of the damages.]

4A Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil*, JIG 91.40 (4th ed. 1999 & Supp.2004).

3. *Canada* involved successive lead-paint poisonings suffered by the minor plaintiff at separate rental properties. The trial court determined that plaintiff's injuries were divisible, a ruling not challenged on appeal, and went on to instruct the jury to apportion among multiple tortfeasors damages between pre-July

The rule of joint and several liability "results in the imposition of liability on multiple defendants whose fault combined to cause a single, indivisible injury or damage to the plaintiff." Michael K. Steenson, *Joint and Several Liability Minnesota Style*, 15 Wm. Mitchell L.Rev. 969 (1989). The justification for joint and several liability "rested on two factual premises: (1) that each defendant had caused the loss; and (2) the absence of any basis for dividing the harm among the defendants." Gerald W. Boston, *Apportionment of Harm in Tort Law: A Proposed Restatement*, 21 U. Dayton L.Rev. 267, 273 (1996). Professor Wigmore believed such wrongdoers should not "go scot free" and proposed the following rule:

> Whenever two or more persons by culpable acts, whether concerted or not, cause a single general harm, not obviously assignable in parts to the respective wrongdoers, the injured party may recover from each for the whole. In short, wherever there is any doubt at all as to how much each caused, take the burden of proof off the innocent suffer-

er; make any one of them pay him for the whole, and then let them do their own figuring among themselves as to what is the share of blame for each. John H. Wigmore, *Joint–Tortfeasors and Severance of Damages: Making the Innocent Party Suffer Without Redress*, 17 Ill. L.Rev. 458, 459 (1923) (emphasis omitted).[4] Minnesota adopted joint-and-several liability principles in *Flaherty v. Northern Pac. Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160–61 (1888). This common-law rule has been incorporated into our comparative negligence statute in modified form. Minn.Stat. § 604.02, subd. 1 (2004).[5]

A "necessary corollary" to the rule of holding each defendant liable for the entire harm was "that when the harm can be apportioned on some rational basis, then liability should be proportionate only." Boston, supra, at 284. Apportionment principles were incorporated in the Restatement (Second) of Torts §§ 433A, 433B (1965). These apportionment principles apply to all contributing causes of a single harm and divisible harms. *Id.* § 433A.[6] Preexisting conditions are divisi-

---

1992 lead poisoning and damages occurring after that time. *Canada,* 567 N.W.2d at 508 n. 7 (Minn.1997).

**4.** Professor Prosser believed that the difficulties of proof:

> may have been overstated. The courts quite reasonably have been very liberal in permitting the jury to award damages where the uncertainty as to their extent arises from the nature of the wrong itself, for which the defendant, and not the plaintiff, is responsible.

William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 52, at 350 (W. Page Keeton et al. eds., 5th ed.1984).

**5.** Minnesota Statutes § 604.02, subdivision 1 provides:

> When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following

persons are jointly and severally liable for the whole award:

> (1) a person whose fault is greater than 50 percent;
> (2) two or more persons who act in a common scheme or plan that results in injury;
> (3) a person who commits an intentional tort; or
> (4) a person whose liability arises under chapters 18B—pesticide control, 115—water pollution control, 115A—waste management, 115B—environmental response and liability, 115C—leaking underground storage tanks, and 299J—pipeline safety, public nuisance law for damage to the environment or the public health, any other environmental or public health law, or any environmental or public health ordinance or program of a municipality as defined in section 466.01.

**6.** Restatement (Second) of Torts § 433A provides for the apportionment of harm to causes:

ble harms. *Id.* § 433A cmt. e. "[P]re-existing conditions can be apportioned from the incremental harm attributable to the defendant's tortious conduct. * * * [T]he touchstone of apportionment is reliance on the contribution that causes the ultimate harm and *not* to some actual division of the harm itself." Boston, supra, at 301. Joint and several liability applies to situations involving one "innocent" cause and two or more culpable causes, where either culpable cause would have been sufficient to cause the harm or where both are essential to the harm. Restatement (Second) of Torts § 433A cmt. i.

Restatement (Second) of Torts § 433B(1) states that the plaintiff has the burden of proving that the defendant's tortious conduct caused the harm. Sections 433B(2) and (3), exceptions to the rule stated in subsection (1), provide for burden-shifting in two situations: when the tortious conduct of two or more defendants has combined to bring about harm to the plaintiff, the defendant seeking to limit

(1) Damages for harm are to be apportioned among two or more causes where
(a) there are distinct harms, or
(b) there is a reasonable basis for determining the contribution of each cause to a single harm.
(2) Damages for any other harm cannot be apportioned among two or more causes.

7. Restatement (Second) of Torts § 433B provides:
(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.
(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.
(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to

liability has the burden as to apportionment; and when the plaintiff sues two or more tortfeasors and proves that at least one of them has caused harm to the plaintiff but there is uncertainty as to which one has caused it, the burden is on the defendant to prove that he had not caused the harm.[7] Comment "c," in reiterating that subsection (2) is an exception to the general rule on burden of proof "where the tortious conduct of two or more actors combines to bring about the harm," indicates that burden-shifting only applies in multiple tortfeasor situations. Restatement (Second) of Torts § 433A cmt. c.

Restatement (Second) of Torts § 434 spells out the functions of the court and jury. The court determines whether the evidence meets the causation threshold and whether the harm is divisible. Restatement (Second) of Torts § 434(1)(a), (b). If the harm is divisible, the jury determines the apportionment. *Id.* § 434(2)(b).[8]

which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

8. Restatement (Second) of Torts § 434 provides:
(1) It is the function of the court to determine
(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;
(b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and
(c) the questions of causation and apportionment, in any case in which the jury may not reasonably differ.
(2) It is the function of the jury to determine, in any case in which it may reasonably differ on the issue,
(a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and
(b) the apportionment of the harm to two or more causes.

We adopted the rationale of Restatement (Second) of Torts § 433B(2) in *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970):

[W]e feel that the rule adopted in Restatement [Second of Torts] § 433B(2), is the one by which we should be governed. This section provides:

"Where the tortious conduct of two or more actors has been combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor."

Thus, in a multiple-impact situation, the burden of proving that the harm can be separated falls on those defendants who contend that it can be apportioned.

*Id.* at 22, 178 N.W.2d at 845.

We also embraced the rationale of Restatement (Second) of Torts § 434(b)(1):

Having decided that the burden of establishing that the injuries in a multiple-accident situation are capable of apportionment rests upon the defendants so claiming, we further hold that it is the function of the trial court to determine whether such burden has been met. Whether or not the harm to the plaintiff is capable of apportionment among two

or more causes is a question of law. Once the trial court determines that the harm is capable of apportionment, the question of actual apportionment of damages among several causes becomes one of fact to be determined by the jury.

*Mathews*, 288 Minn. at 23, 178 N.W.2d at 845 (citing Restatement (Second) of Torts § 434 cmt. d).[9] In that the question of whether the harm is capable of apportionment is a legal one, CIVJIG 91.40's instruction (advising the jury that if it cannot separate the damages then the defendant is liable for all of the damages) improperly assigns the legal question to the jury.

In taking the position that collective liability principles extend to aggravations of preexisting conditions, the dissent relies on Dan B. Dobbs, *The Law of Torts* § 174, at 425 (2000) (citing the *Newbury* line of cases).[10] There is, however, well-regarded authority to the contrary. 1 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation* § 6:6 (2d.ed.2002) ("Where the aggravation of a preexisting injury is involved, generally the plaintiff has the burden of proof on apportioning the injuries which are a result of the preexisting condition and those which are a result of the aggravation of the condition.");[11] Prosser & Keeton, supra, § 52 at

9. Restatement (Second) of Torts § 434 cmt. d reads as follows:

The question whether the harm to the plaintiff is capable of apportionment among two or more causes is a question of law, and is for the decision of the court in all cases. Once it is determined that the harm is capable of being apportioned, the actual apportionment of the damages among the various causes is a question of fact, which is to be determined by the jury, unless the evidence is such that reasonable men could come to only one conclusion.

10. *See, e.g., Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 813 (1963) (stating that "plain-

tiff was entitled to an instruction advising the jury that if they could not apportion the disability between the pre-existing arthritis and the trauma then the defendant was liable for the entire damage resulting from the disability."); *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091, 1092 (Me.1995) (applying *Newbury* single injury rule); *Tingey v. Christensen*, 987 P.2d 588, 591–92 (Utah 1999) (recognizing *Newbury* rule).

11. Lee & Lindahl note the rule may be different in medical malpractice cases, citing *Fosgate v. Corona*, 66 N.J. 268, 330 A.2d 355, 359 (1974). Lee & Lindahl, *supra*, § 6:6 n. 7.

351 (W. Page Keeton, et al. eds., 5th ed.1984) (citing the *Newbury* line of cases as well as other cases rejecting the idea of shifting the burden of proof to the defendant).[12] I believe that CIVJIG 91.40 holds a defendant responsible for a portion of damages suffered by the plaintiff which were due to an innocent cause, a proposition which is contrary to the philosophy of our *Watson/Schore* line of cases.[13]

MEYER, Justice (dissenting).

The position espoused by the majority, that CIVJIG 91.40 misstates Minnesota law, utterly fails to answer the essential question raised by CIVJIG 91.40: what happens if the jury simply cannot apportion damages caused by the preexisting injury and those caused by the accident, even after all the evidence has been presented? The majority leaves the plaintiff in that case completely uncompensated. A plaintiff with a symptomatic preexisting injury whose symptoms are significantly aggravated by a tortfeasor is left to bear the fault of the tortfeasor. This result is contrary to our policy of allowing fair compensation to injured plaintiffs. This result is also contrary to the law of the vast majority of states that have considered this issue.

It has long been recognized that a tortfeasor is liable for all injuries proximately caused by the tortfeasor's negligence, even if such injuries could not have been anticipated. *Dellwo v. Pearson,* 259 Minn. 452, 455, 107 N.W.2d 859, 861 (1961); *Christianson v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 67 Minn. 94, 96–97, 69 N.W. 640, 641 (1896). In the context of preexisting physical conditions, this principle is called the eggshell (or thin skull) plaintiff doctrine, and is fundamental to tort law. *See, e.g.,* Restatement (Second) of Torts § 461; *Purcell v. St. Paul City Ry. Co.,* 48 Minn. 134, 139, 50 N.W. 1034, 1035 (1892) ("[A]ny one injured by the negligence must be entitled to recover to the full extent of the injury so caused, without regard to whether, owing to his previous condition of health, he is more or less liable to injury."). The primary policy reason for this doctrine is that as between the innocent victim and the negligent tortfeasor, the tortfeasor should answer for his or her negligent actions. Dan B. Dobbs, *The Law of Torts* § 124 at 425 (5th ed.2000).

The issue raised by this case is slightly different, in that rather than a preexisting

12. Of interest is the experience of the Hawaii Supreme Court which adopted the *Newbury* rule, only to repudiate the rule 23 years later. *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345, 357–58, 362 (1994). *Montalvo* involved a plaintiff with a preexisting back condition who was also injured in unrelated accidents prior to the one for which he brought suit and alleged post-accident aggravations of the same injuries. The Hawaii Supreme Court held that if, on remand, the jury found that the preexisting condition was not fully resolved or not dormant or latent at the time of the sued-upon accident, apportionment was required, if "even roughly"; but if that failed, then in equal shares among the various causes. *Id.* at 363. Professor Boston believes that "*Montalvo* represents modern authority that is driven by a sense of fairness to all the

parties and a preference for a single proceeding in which all responsible parties are joined." Boston, *supra,* at 341.

13. I do not believe that the rule taking the plaintiff's preexisting condition into account in assessing damages is inconsistent with the "thin skull" rule that holds the defendant liable for the unforeseeable aggravation of a preexisting condition. The rule that the "defendant takes his victim as he finds him * * * simply means that the extent of the victim's actual injury from the accident need not have been reasonably foreseeable." Joseph H. King, Jr., *Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353, 1361 (1981).

condition caused by a disease or a congenital propensity, the plaintiff had a preexisting condition caused by a previous injury. But why should tortfeasors be "given a break" if a plaintiff's preexisting condition was caused by injury rather than a congenital propensity? I find no rational reason for such a distinction.

I believe that the policy reason for holding a tortfeasor liable in an eggshell plaintiff situation—that the liability for injury should rest with the tortfeasor and not the innocent victim—is equally applicable to aggravation of a preexisting injury. The majority makes much of the distinction between the eggshell plaintiff doctrine and aggravation of preexisting injuries, minimizing the considerable overlap between the two. Existing case law illustrates the vast gray area consisting of injury to plaintiffs with preexisting conditions such as osteoarthritis or degenerative disc disease. The eggshell plaintiff doctrine has been applied to plaintiffs with such conditions as respiratory troubles caused by smoking (*Wolbers v. Finley Hosp.*, 673 N.W.2d 728, 735–36 (Iowa 2003)); atrophied muscle (*Grebasch v. State*, 674 N.W.2d 682, 2003 WL 22697266 at *4–5 (Iowa Ct.App. Nov.17, 2003)); degenerative disc disease (*McDevitt v. Wenger*, No.2002AP090071, 2003 WL 22700553 at *4 (Ohio Ct.App. Nov. 10, 2003)); and osteoarthritis (*Smith v. Galaz*, 330 Ark.222, 953 S.W.2d 576, 578 (1997)). These are conditions that qualify equally well as preexisting injuries. In the instant case, the evidence shows that Rowe had degenerative joint disease before the accident, but that her prior neck and back problems had resolved to the point that she "felt really great" and "better than [she] had in a long time." How does her preexisting condition differ from that of the eggshell plaintiff with osteoarthritis? I believe that it does not.

The majority deems this position an impermissible extension of existing Minnesota law, claiming that it would tend to overcompensate the plaintiff and run counter to our policy of ensuring that the defendant is responsible only for the damages that he or she caused. However, the majority's position runs counter to our equally important policy of protecting the innocent victim over the wrongdoer. *See, e.g., Ross v. Great N. Ry. Co.*, 101 Minn. 122, 125, 111 N.W. 951, 953 (1907) ("Where a tort is committed * * *, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health."). The majority arbitrarily makes a decision that sacrifices one public policy for another. Rather than pick and choose among competing policies, I believe the better approach is to ask whether placing the burden of apportionment on the defendant in this situation is reasonable, and whether it has support in case law from other jurisdictions.

A leading treatise on tort law has adopted the position that the defendant should bear the burden of apportionment. It is generally accepted that when an indivisible injury is caused by two or more tortfeasors, courts impose joint and several liability, holding each tortfeasor liable for the entire injury. Dobbs, supra, § 174 at 423. However, "the principle is not limited to cases of two tortfeasors, but can apply whenever the injury inflicted by the tortfeasor combines with another condition to produce an indivisible harm." *Id.* § 174 at 425. Ideally, the tortfeasor will be held liable only for any aggravation of the preexisting condition. *Id.* "But if the tortious harm combines with the existing condition to leave the plaintiff with an indivisible injury, courts may impose liability for the whole injury upon the defendant unless

he can show grounds for apportionment." *Id.*

There is also support for this position in Restatement (Second) of Torts, which provides:

> Where the tortious conduct of two or more actors has combined to bring about harm * * *, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

Restatement (Second) of Torts § 433B(2) (1965). An official comment makes it clear that this section may be applied to single-defendant situations where some preexisting harm is aggravated:

> The reason for the exceptional rule placing the burden of proof as to apportionment upon the defendant or defendants is the injustice of allowing a proved wrongdoer who has in fact caused harm to the plaintiff to escape liability merely because the harm which he has inflicted has combined with similar harm inflicted by other wrongdoers, and the nature of the harm itself has made it necessary that evidence be produced before it can be apportioned. * * * *As between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former.*

Restatement (Second) of Torts § 433B cmt. d (emphasis added). The majority implicitly concedes that this comment correctly advocates shifting the burden to the defendant in situations where a preexisting condition was caused by a previous tortfeasor, and that the defendant should not be "given a break" in these situations. But the majority's holding disregards these situations, which highlights the arbitrariness of the majority's decision to abandon our policy of protecting the innocent injured person over the wrongdoer.

Of the states that have considered this issue, the vast majority have held that if the jury cannot apportion damages between a preexisting and an aggravating injury, the defendant is liable for the total injury. *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 632 P.2d 539, 545 (Alaska 1981); *Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 813 (1963); *Maser v. Fioretti*, 498 So.2d 568, 570 (Fla.Dist.Ct. App.1986); *Bushong v. Kamiah Grain, Inc.*, 96 Idaho 659, 534 P.2d 1099, 1101 (1975); *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091, 1092 (Me.1995); *McNabb v. Green Real Estate Co.*, 62 Mich.App. 500, 233 N.W.2d 811, 819–20 (1975), *superseded by statute on other grounds*, Mich. R. Evid. 404; *Brake v. Speed*, 605 So.2d 28, 33 (Miss.1992); *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726, 730 (1996); *Kleitz v. Raskin*, 103 Nev. 325, 738 P.2d 508, 509 (1987); *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313, 1324–25 (1990) (relying on Restatement (Second) of Torts § 433B cmt. d); *Haws v. Bullock*, 592 S.W.2d 588, 591 (Tenn.Ct.App.1979); *Tingey v. Christensen*, 987 P.2d 588, 592 (Utah 1999); *Phennah v. Whalen*, 28 Wash.App. 19, 621 P.2d 1304, 1309 (1980); *Bigley v. Craven*, 769 P.2d 892, 898 (Wyo.1989).[1] Only two

---

**1.** The Supreme Court of New Jersey has held that "[I]n a situation where * * * malpractice or other tortious act aggravates a preexisting disease or condition, * * * the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages * * * are capable of some reasonable apportionment." *Fosgate v. Corona*, 66 N.J. 268, 330 A.2d 355, 358 (1974). The supreme court has not rejected the application of this rule to negligence cases other than medical malpractice.

states considering the issue of indivisible injury have rejected this approach. *See Foggia v. Des Moines Bowl–O–Mat, Inc.,* 543 N.W.2d 889, 893–94 (Iowa 1996); *Mayer v. N. Arundel Hosp. Ass'n, Inc.,* 145 Md.App. 235, 802 A.2d 483, 494 (2002). Two states have determined that if the jury is unable to apportion, then the damages are divided equally among the various causes. *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345, 357–58 (1994); *Card v. State,* 57 Conn.App. 134, 747 A.2d 32 (2000). By adopting the majority's holding, Minnesota chooses a path rejected by every court but Iowa and Maryland.

In each of the states placing the burden on the defendant, the court recognized the importance of holding the tortfeasor responsible only for the aggravation of a preexisting injury, but recognized that when apportionment is impossible, the tortfeasor should bear the burden of uncertainty in the determination of damages. *See, e.g., Tingey,* 987 P.2d at 592. This proposition follows from several legal principles: a tortfeasor takes an accident victim as he or she finds them; a tortfeasor bears the burden of unpredictability in the extent of the damage to a victim; and a tortfeasor should not escape liability for damage caused by the tortfeasor because the damages cannot be proved with precision. *Id.*

CIVJIG 91.40 follows the reasoning laid out in *The Law of Torts* and case law from the various jurisdictions cited above. It does not place the burden of apportionment on the defendant in all situations. The plaintiff still has the burden of showing that the accident caused an aggravation of a preexisting condition, thus furthering the policy of placing the burden on the party with the greater amount of information. CIVJIG 91.40 clearly states that the defendant is "liable only for any damages that you [the jury] find to be directly caused by the accident." This directly addresses the majority's concern for not overcompensating the plaintiff. The tortfeasor is only held liable for the entire injury in the rare case where the jury, upon all the evidence produced by both plaintiff and defendant, is unable to separate the harm caused by the tortfeasor from the plaintiff's preexisting injury.[2] This part of the instruction emphasizes the importance of protecting the innocent victim over the wrongdoer. Thus, CIVJIG 91.40 encourages holding the defendant liable only for the damages he or she caused, but also recognizes the need to *balance* this policy with that of protecting the innocent plaintiff, rather than disregarding one or the other.

For the reasons stated, I would adopt the following holding:

> Where a preexisting disease or condition exists, and where a tortfeasor causes aggravation of the condition and disability and pain results, and no apportionment of the damage between that caused by the preexisting condition and that caused by the tortfeasor can be made, the tortfeasor is responsible for the entire damage.

I would reverse the court of appeals and uphold the award of damages to the plaintiff.

---

**2.** The majority argues that CIVJIG 91.40 tries to do too much by sweeping in cases where apportionment is possible. This is manifestly not the case. CIVJIG 91.40 expressly instructs the jury to shift the burden only in instances where apportionment is impossible. As the majority notes, citing the court of appeals, "it would be the exceptional case in which there is no reasonable basis for apportionment." *Rowe v. Munye,* 674 N.W.2d 761, 768 (Minn.App.2004). The majority appears to have little confidence in the ability of a jury to do its job, when it worries that "confusing or conflicting testimony" could lead to inability to separate damages.

PAGE, Justice (dissenting).

I join in the dissent of Justice Meyer.